UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID C. RODEARMEL,

       Plaintiff,

       v.

HILLARY RODHAM CLINTON,
Secretary of State, and
UNITED STATES DEPARTMENT OF
STATE,

       Defendants.

Civil Action No. 09-171

**MEMORANDUM OPINION**

PER CURIAM: This case is before the court on the defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the plaintiff's cross-motion for summary judgment pursuant to Rule 56(c). The plaintiff, David Rodearmel, a Foreign Service Officer in the United States Department of State (State Department), brought suit against the defendants, Hillary Clinton in her official capacity as Secretary of State and the State Department, alleging that Clinton's appointment and continuance in office as Secretary of State violates article I, section 6, clause 2 of the United States Constitution.[1] For the reasons set forth

---

[1]Article I, section 6, clause 2 of the United States Constitution provides:

No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

1

below, we dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**I.**

Rodearmel has been a commissioned United States Foreign Service Officer since 1991. Complaint (Compl.) ¶ 6. At his commissioning, Rodearmel took the following statutorily-prescribed oath:

> I, [David Rodearmel], do solemnly swear that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

*Id.* ¶ 7; *see* 5 U.S.C. § 3331 (2006) ("An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath: . . . .").

In November 2006, Clinton was reelected to serve a second six-year term as a United States Senator from New York beginning on January 3, 2007. Compl. ¶ 9. On January 21, 2009, Clinton was sworn in as Secretary of State after resigning her Senate seat. *Id.* The salary for the Secretary of State was increased by executive order at least twice during Clinton's second term and before she became Secretary of State. *See* Exec. Order No. 13,454, 73 Fed. Reg. 1481 (Jan. 4, 2008) (salary increase effective first pay period after January 1, 2008); Exec. Order No. 13,483, 73 Fed. Reg. 78,587 (Dec. 18, 2008) (salary increase effective first pay period after January 1, 2009).[2] On

---

We refer to the language before the semicolon as the Ineligibility Clause. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 210 (1974) (referring to first limitation of U.S. Const. art. 1, § 6, cl. 2 as "Ineligibility Clause" and second limitation as "Incompatibility Clause").

[2]An earlier executive order issued on December 21, 2006, increasing the Secretary of State's salary effective January 7, 2007. Exec. Order No. 13,420, 71 Fed. Reg. 77,571 (Dec. 21, 2006) (salary increase effective first pay period after January 1, 2007); *see* Memorandum from Linda M. Springer, Director, U.S.

December 10, 2009, the Congress passed a joint resolution, signed into law by the President on December 19, 2009, providing:

> The compensation and other emoluments attached to the office of Secretary of State shall be those in effect January 1, 2007, notwithstanding any increase in such compensation or emoluments after that date under any provision of law, or provision which has the force and effect of law, that is enacted or becomes effective during the period beginning at noon of January 3, 2007, and ending at noon of January 3, 2013.

S.J. Res. 46, 110th Cong. § 1(a), Pub. L. No. 110-455, 122 Stat. 5036, 5036 (2008) (Secretary of State Emoluments Act) (effective 12:00 p.m. on January 20, 2009).

On January 29, 2009, Rodearmel brought suit in this court against Clinton and the State Department.[3] In Count I, he alleges that "Clinton's appointment and continuance in office as U.S. Secretary of State violates [the Ineligibility Clause]" and that he "is suffering and will continue to suffer significant, irreparable harm by reason of Defendant Clinton's unconstitutional appointment and continuance in office." Compl. ¶¶ 21-22. In Count II, he alleges that the defendants "are violating [his] rights under the Fifth Amendment to the U.S. Constitution by depriving [him] of his property right to continued employment as a U.S. Foreign Service Officer at the U.S. Department of State without due process of law." Id. ¶ 25. Rodearmel requests that the court (1) declare Clinton's appointment and continuance in office to be in violation of the Ineligibility Clause; (2)

---

Office of Pers. Mgmt. to Heads of Executive Dep't's & Agencies (Dec. 21, 2006), http://www.opm.gov/oca/compmemo/2006/2006-19.asp (first pay period after January 1, 2007 began January 7, 2007). Depending on whether the Ineligibility Clause refers to the date a salary increase is authorized or to its effective date, this increase may also implicate the Ineligibility Clause but we need not decide the matter.

[3]Rodearmel requested a three-judge panel pursuant to the Secretary of State Emoluments Act, which provides that "[a]ny claim challenging the constitutionality of the appointment and continuance in office of the Secretary of State on the ground that such appointment and continuance in office is in violation of [the Ineligibility Clause] in an action brought under paragraph (1) shall be heard and determined by a panel of three judges in accordance with section 2284 of title 28, United States Code." S.J. Res. 46 § 1(b)(2), 122 Stat. at 5036; see 28 U.S.C. § 2284(b)(1) (authorizing chief judge of circuit to designate three-judge court).

declare that the defendants' requirement that Rodearmel "serve under, take direction from, and report to Defendant Clinton" violates his rights under the Fifth Amendment; (3) enjoin Clinton from continuing to serve as Secretary of State; and (4) enjoin the State Department from requiring Rodearmel "to serve under, take direction from, and report to Defendant Clinton." *Id.* at 8.

On May 20, 2009, the defendants moved to dismiss the complaint, arguing that Rodearmel lacks standing to raise his claims or, in the alternative, that Clinton's appointment does not violate the Ineligibility Clause. Rodearmel then filed a cross-motion for summary judgment. On the merits, he argues that an increase in the salary of a civil office during a Senator's term disqualifies the Senator from being appointed to that office under the Ineligibility Clause notwithstanding the Congress's enactment of legislation reducing the salary to the level it was at the time the senatorial term began. We heard arguments on the motions on September 16, 2009.

## II.

We first address the defendants' challenge to Rodearmel's standing and thus to our subject matter jurisdiction. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1286 (D.C. Cir. 2005) ("Want of jurisdiction robs a federal court of the power to act [and] standing is a prerequisite to jurisdiction.") (internal citations omitted). Rodearmel asserts that our jurisdiction arises both from the Secretary of State Emoluments Act and from 28 U.S.C. § 1331, the latter granting original jurisdiction to the district court of "all civil actions arising under the Constitution." "A litigant challenging government action under a federal statute must satisfy" both "the constitutional requirements of standing" and "its prudential prerequisites." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995). To establish standing under Article III of the Constitution, a party "must allege (1) a personal injury-in-fact that is (2) fairly traceable to the

4

defendant's conduct and (3) redressable by the relief requested." *Rainbow/PUSH Coal. v. FCC*, 396 F.3d 1235, 1240 (D.C. Cir. 2005) (internal quotations omitted). "To establish prudential standing, a party's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1266 (D.C. Cir. 2004) (internal quotations omitted).

We first examine whether Rodearmel has prudential standing under the Secretary of State Emoluments Act. The Act provides:

> Any person aggrieved by an action of the Secretary of State may bring a civil action in the United States District Court for the District of Columbia to contest the constitutionality of the appointment and continuance in office of the Secretary of State on the ground that such appointment and continuance in office is in violation of article I, section 6, clause 2, of the Constitution. The United States District Court for the District of Columbia shall have exclusive jurisdiction over such a civil action, without regard to the sum or value of the matter in controversy.

S.J. Res. 46 § 1(b)(1), 122 Stat. at 5036. We emphasize that the Act requires that Rodearmel be "aggrieved *by an action* of the Secretary of State." *Id.* (emphasis added). The complaint alleges that Rodearmel "is being aggrieved by the actions of Defendants Clinton and the U.S. Department of State. Namely, Plaintiff is being required to serve under, take direction from, and report to Defendant Clinton." Compl. ¶ 16. But nowhere does Rodearmel allege that Clinton has given him any specific order or direction or taken any other action that has aggrieved him. Because Rodearmel has failed to allege that Clinton has taken *any* action—much less an action that has aggrieved him—he does not come within the "zone of interests" protected by the Secretary of State Emoluments Act and therefore lacks prudential standing.[4]

---

[4]At the hearing, counsel for Rodearmel asserted that the "action of the Secretary of State" that aggrieved him was Clinton's taking the oath of office. While taking an oath may be considered an action, Clinton took the oath of office in order to become, i.e., *before* becoming, Secretary of State. Accordingly, her taking the oath of office is not an action "of" the Secretary of State within the meaning of the Emoluments

We next consider whether Rodearmel has Article III standing.[5] As set out above, Article III standing requires that a party demonstrate an "(1) injury-in-fact, (2) causation, and (3) redressability." *Rainbow/PUSH Coal. v. FCC*, 330 F.3d 539, 542 (D.C. Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The injury-in-fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "In analyzing . . . standing at the dismissal stage, we must assume that [the plaintiff] states a valid legal claim" and we "must accept the factual allegations in the complaint as true." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (internal quotations and citations omitted). Applying this standard, we conclude that Rodearmel lacks constitutional standing.

Previous challenges to presidential appointments under the Ineligibility Clause have failed for lack of an injury in fact necessary for standing. In *Ex parte Levitt*, 302 U.S. 633 (1937) (per curiam), a member of the bar of the United States Supreme Court challenged the appointment of Justice Hugo Black to the High Court under the Ineligibility Clause.[6] The Court noted that the petitioner had "disclose[d] no interest . . . other than that of a citizen and a member of the bar of this Court" and concluded that his interest was "insufficient" to support jurisdiction. 302 U.S. at 634. The Court stated:

> It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that

---

Act.

[5] Whether or not Rodearmel has prudential standing under the Secretary of State Emoluments Act, he must demonstrate Article III standing under either the Act or 28 U.S.C. § 1331. *See Taylor*, 56 F.3d at 1507.

[6] Justice Black was a United States Senator at the time of his judicial appointment.

> he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.

*Id.*

In *McClure v. Carter*, 513 F. Supp. 265 (D. Idaho 1981), *aff'd sub nom. McClure v. Reagan*, 454 U.S. 1025 (1981), a United States Senator alleged that the appointment of a member of the House of Representatives to the United States Court of Appeals for the District of Columbia Circuit violated the Ineligibility Clause. Relying on *Levitt*, the three-judge district court rejected the Senator's standing as a "private individual." 513 F. Supp. at 269-70. The court also rejected his standing as a legislator. *Id.* at 270. While the Senator had an interest in "'maintaining the effectiveness of (his) votes,'" the challenged judicial appointment did not impair the effectiveness of the Senator's vote against confirmation. *Id.* (quoting *Coleman v. Miller*, 307 U.S. 433, 438 (1939)) (first alteration in *McClure*).[7] Accordingly, the district court "conclude[d] that a United States Senator, suing in either his individual capacity or his official capacity as a senator, lacks standing to challenge the validity of the appointment of a federal judge." *Id.* at 269. The court also concluded that the special jurisdictional statute "purport[ing] to grant standing" did not "confer upon a senator . . . a 'right' to seek a decision from a federal court that such a senator . . . would otherwise be powerless to procure." *Id.* at 271.[8]

---

[7] In *Coleman*, a group of Kansas state senators challenged a state senate resolution ratifying a proposed amendment to the United States Constitution, arguing that the deciding vote in favor of the resolution was invalid. 307 U.S. at 435-36. On appeal from the state supreme court, the United States Supreme Court concluded that the state senators had standing to appeal because they "claimed a right and privilege under the Constitution of the United States to have their votes given effect and the state court ha[d] denied that right and privilege." *Id.* at 438.

[8] The statute at issue in *McClure* provided:

> (1) Any Member of Congress, whether he voted to confirm or not to confirm the appointment of any judge appointed during the 96th Congress to the United States Court of

7

We see no dispositive difference between the injury alleged by Rodearmel and those asserted by the *Levitt* and *McClure* plaintiffs, respectively. As in those cases, Rodearmel's general interest as a citizen in the constitutionality of Clinton's appointment does not give him standing. Nor does his employment as a Foreign Service Officer provide a basis for standing. He points to no specific duty or responsibility he has as a Foreign Service Officer that has been impaired—or even affected—by Clinton's appointment. *See McClure*, 513 F. Supp. at 270 (no standing because effectiveness of Senator's vote not impaired); *Coleman*, 307 U.S. at 438 (standing because state legislators have "a right and privilege under the Constitution of the United States to have their votes given effect and the state court ha[d] denied that right and privilege"). Instead, he argues that "requiring [him] to serve under, take direction from, and report to a constitutionally ineligible superior impairs [his] effectiveness as a U.S. Foreign Service Officer and an Officer of the United States because doing so is in direct conflict with [his] oath" to uphold the Constitution. Opposition to Defendants' Motion to Dismiss and Plaintiff's Memorandum in Support of His Cross-Motion for Summary Judgment at 13-14. Specifically, he claims that he "cannot serve under Defendant Clinton

---

> Appeals for the District of Columbia, or whether he abstained from, or was not present for such vote, may bring a civil action in the United States District Court for the District of Columbia or in any United States District Court in the State he represents to contest the constitutionality of the appointment and continuance in office of said Circuit Judge on the ground that such appointment and continuance in office is in violation of Article I, section 6, clause 2 of the Constitution; (2) The designated United States District Courts shall have exclusive jurisdiction, without regard to the sum or value of the matter in controversy, to determine the validity of such appointment and continuance in office; (3) Any action brought under this section shall be heard and determined by a panel of three judges in accordance with the provisions of section 2284 of title 28, United States Code. Any appeal from the action of a court convened pursuant to such section shall lie to the Supreme Court; and (4) Any judge designated to hear any action brought under this section shall cause such action to be in every way expedited.

*McClure*, 513 F. Supp. at 266 n.1 (quoting Act of October 12, 1979, Pub. L. No. 96-86, § 101(c), 93 Stat. 656, 657-58).

without violating his oath" and that "[s]hould [he] refuse to serve under, take direction from, or report to [her], [he] would be at substantial risk of disciplinary action, including removal, for insubordination or other, related grounds." Compl. ¶ 17.

Rodearmel relies on *Board of Education v. Allen*, 392 U.S. 236 (1968), and *Clarke v. United States*, 705 F. Supp. 605 (D.D.C. 1988), *aff'd*, 886 F.2d 404 (D.C. Cir. 1989), *reh'g denied*, 898 F.2d 161 (D.C. Cir. 1989), *vacated as moot*, 915 F.2d 699 (D.C. Cir. 1990), to support his standing based on the taking of his oath. In *Allen*, a New York law required local school boards of education to lend textbooks to private schools, including parochial schools. 392 U.S. at 239. One school board brought suit in state court against the New York Commissioner of Education challenging the constitutionality of the state law under the First and Fourteenth Amendments to the United States Constitution. *Id.* at 240-41. On appeal from the New York Court of Appeals, the United States Supreme Court concluded that the school board members had standing, declaring:

> [The school board members] have taken an oath to support the United States Constitution. Believing [the state law] to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step—refusal to comply with [the state law]—that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that [the school board members] thus have a "personal stake in the outcome" of this litigation.

*Id.* at 241 n.5 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).[9] In *Clarke*, the Congress conditioned the appropriation of funds to the District of Columbia (D.C.) upon the D.C. Council's enacting an ordinance permitting religious educational institutions to deny funding, services and facilities to any organization promoting a homosexual lifestyle or belief. 705 F. Supp. at 606-07. All thirteen members of the D.C. Council brought an action alleging that the statute appropriating

---

[9]The quoted footnote contains the Supreme Court's entire discussion of standing in *Allen*; the Court went on to uphold the New York law. *Allen*, 392 U.S. at 241 n.5, 248.

9

funds to D.C. violated the First Amendment to the United States Constitution. *Id.* at 607. The court concluded that the Council members had standing because their injury—"deprivation by Congress of their first amendment right to vote in accordance with their own views of the constitution and the public interest"—was "sufficiently specific and concrete to satisfy requirements of standing." *Id.* at 608. In the alternative, the court found that the Council members had standing because they "must either vote in a way which they believe violates their oaths [to uphold the Constitution], or face almost certain loss of their salaries and staffs as well as water, police and fire protection." *Id.* at 608 (citing *Allen*, 392 U.S. 236).

In contrast to the plaintiffs in *Allen* and in *Clarke*, Rodearmel has not alleged that he has been required to take any action that he believes is itself unconstitutional and that would therefore lead him to violate his oath of office. In both *Allen* and *Clarke*, the plaintiffs either had to take an action that they believed violated the Constitution or risk a concrete injury. *See Allen*, 392 U.S. at 240 (school board members were required to "lend books to parochial school students," which they believed to be in violation of [the First Amendment], or risk being removed from office); *Clarke*, 705 F. Supp. at 608 ("Council members must either vote in a way which they believe violates [the First Amendment], or face almost certain loss . . . ."). Rodearmel, on the other hand, merely alleges that "serving under, taking direction from, and reporting to" Clinton would be contrary to his oath of office without alleging the specific constitutional violation that he believes he would be committing by remaining under her supervision. Assuming Clinton unconstitutionally holds office as Secretary of State, it does not follow that a Foreign Service Officer generally serving under, taking direction from and reporting to Clinton performs an unconstitutional act thereby, especially in the absence of any allegation that his service is in any way different from what it was under

10

Clinton's predecessors in office. Accordingly, Rodearmel's reliance on the notion of oath-based standing recognized in *Allen* and *Clarke* is misplaced.

Rodearmel also lacks Article III standing to pursue his due process claim. In Count II, he claims that the defendants are "depriving [him] of his property right to continued employment" without due process under the Fifth Amendment. Compl. ¶ 25. Specifically, he alleges that being required to "serve under, take direction from, and report to" a constitutionally ineligible superior "materially and fundamentally changes the terms and conditions of [his] employment" and "constructively discharges him from his employment . . . if he is to remain faithful to his oath." Compl. ¶¶ 18-19. We note that Rodearmel remains employed by the State Department as a Foreign Service Officer and his future loss of that position—whether by actual discharge or resignation under circumstances constituting constructive discharge—is entirely speculative. Thus, any injury to Rodearmel's property right in continued employment, to the extent such a right exists, is not "actual or imminent" and does not support his standing. *Lujan*, 504 U.S. at 560 (internal quotations omitted). To the extent he has a property right in the "terms and conditions" of his employment and assuming these include the right not to be required to violate the Constitution, Rodearmel's claim fails because, as noted, he has not asserted any action he either has taken or must take that is itself alleged to be unconstitutional.[10]

---

[10]Because we conclude that Rodearmel lacks standing based on his failure to allege an injury in fact, we do not reach the causation or redressability elements of standing or the merits of his Ineligibility Clause challenge.

For the foregoing reasons, the court grants the defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and denies the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 29th day of October, 2009.[11]

KAREN LECRAFT HENDERSON
United States Circuit Judge

REGGIE B. WALTON
United States District Judge

JAMES ROBERTSON
United States District Judge

---

[11] An order will be entered contemporaneously with this memorandum opinion (1) granting the defendants' motion to dismiss and (2) denying the plaintiff's cross-motion for summary judgment.